DECISION
A trial was held August 14, 2008. Alice Chaloux, Certified Public Accountant, represented Plaintiff. Testifying as witnesses were Jeremy Youngquist; Eugene R. Hill (Hill), Base Manager for Arctic Air Service, Inc. (Arctic Air); and Captain Gary S. Lewin, Columbia River Bar Pilots. James C. Wallace, Assistant Attorney General, represented Defendant. Sharon J. Watson, Auditor, provided testimony.
At issue is whether Plaintiff's wages are exempt from Oregon taxation for the tax years 2003 and 2004.
 I. STATEMENT OF FACTS
During 2003 and a portion of 2004, [1] Plaintiff was a resident of the State of Washington. He was employed by Arctic Air. That company was located in Oregon at Astoria. It was from that location, or hub, that Plaintiff conducted his business.
Plaintiff operated helicopters for Arctic Air. His regular duties included transporting personnel of Columbia River Bar Pilots to and from shipping vessels entering and leaving the Columbia River. *Page 2 
Hill is the Base Manager for Arctic Air. He testified about the company's expectations of Plaintiff and the other pilots. Arctic Air began its flights in October of 2003. In earlier years, the helicopters flew mainly over Oregon territory. "Numerous complaints" were filed with the Federal Aviation Authority. As a result, the primary route is over Washington and less inhabited areas. The FAA exempts such companies from the requirement to file flight plans. Hill stated that the company expects pilots to "take-off to the north and fly at least three miles north of the river shore line." The helicopters do their flying about 70 percent at night and 30 percent during daylight hours. The average speed is 142 miles per hour and the majority of the flying time is offshore.
The Columbia River (CR) buoy is an important marker for the flights in this case. It is located 10 nautical miles west of the Oregon coastline. Hill stated flights to that area took about "six flying minutes." He also said most of the ships that were the flights' targets were located to the northwest, off the coast of Washington.
Plaintiff testified in great detail at trial. He stated, during the time period at issue, he worked 12 hour shifts (12 hours on and 12 hours off) for a period of 7 consecutive days (with the next 7 days off). His usual duties were to transport ship pilots by helicopter to and from the vessels. Boarding occurred at between 5 and 20 miles from the CR buoy. Most ships approach from the north. The exceptions occur "once every few months"; Plaintiff recalled less than 10 in his 6 years experience. The ships are usually northwest of the Columbia River.
Plaintiff's usual flight path was from Astoria due north to the Columbia River and then west to the Pacific Ocean. He stated he never flew west without first going north. That was because his motto was to "fly friendly" and avoid going directly over residential areas in both Oregon and Washington. The flights always stayed south of Cape Disappointment (in *Page 3 
Washington) because of its higher elevation. He stated the flight time was usually 3 minutes "over the river" and then 10 minutes offshore.
Upon reaching a ship, Plaintiff had precision work to perform. He stated the majority of his work was done offshore. It involved manipulating a hoist from 15 feet to 100 feet above the ship. The river pilots would either be lowered to or retrieved from the ship. Plaintiff and his helicopter (with retrieved pilots) would then either move on to another ship in the area or return directly to shore. One flight might make multiple "drops."
Jeffery Attebery is the President and CEO of Arctic Air. In a letter dated August 11, 2008, he stated:
 "* * * the majority of the flights conducted out of our Astoria Base, where Mr. Youngquist is a pilot, are actually conducted outside of the State of Oregon. The route of flight takes them over the Columbia River, into the State of Washington and offshore from there. Coming inbound from offshore, they follow the same route, effectively keeping them outside of the Oregon State boundaries for over fifty percent of the flight."
(Ptf's Ex 4.)
Defendant's auditor appeared and testified. She stated the lack of independent documentary evidence, such as logs or flight plans, contributed to the issuance of tax deficiencies. The Department's audit conclusion was that "more than 50 percent of Plaintiff's flight-time had been over the jurisdiction of the State of Oregon and, therefore, not excludable from taxation." (Def's Trial Mem at 1.)
 II. ANALYSIS
The usual rule for taxation of nonresidents is found at ORS 316.127(1).[2] That provides, in part: *Page 4 
 "(1) The adjusted gross income of a nonresident derived from sources within this state is the sum of the following:
 (a) The net amount of items of income, gain, loss and deduction entering into the nonresident's federal adjusted gross income that are derived from or connected with sources in this state * * *; and
 (b) The portion of the modifications, additions or subtractions to federal taxable income provided in this chapter and other laws of this state that relate to adjusted gross income derived from sources in this state for personal income tax purposes * * *."
There are special rules for air carrier employees; some are found at OAR-150-316.127(E)(6). It provides, in part:
 "Air carrier employees: Federal law provides that the pay of a nonresident employee of an air carrier having regularly assigned duties on aircraft in more than one state is subject to Oregon income tax only if the employee earns more than 50 percent of that pay in Oregon (see 49 USC 40116). The employee is deemed to earn 50 percent or more of the pay in Oregon if, for the calendar year, the employee's scheduled flight time in Oregon is more than 50 percent of the employee's total scheduled flight time."
The above rule refers to federal law 49 USC section 40116. Two subsections there are important:
Subsection (f)(1) states, in part:
 "(C) an employee is deemed to have earned 50 percent of the employee's pay in a State or political subdivision of a State in which the scheduled flight time of the employee in the State or subdivision is more than 50 percent of the total scheduled flight time of the employee when employed during the calendar year."
Subsection (f)(2) provides:
 "The pay of an employee of an air carrier having regularly assigned duties on aircraft in at least 2 States is subject to the income tax laws of only the following: *Page 5 
 (A) The State or political subdivision of the State that is the residence of the employee.
 (B) The State or political subdivision of the State in which the employee earns more than 50 percent of the pay received by the employee from the carrier."
This case presents a key question of fact: Where did Plaintiff fly as a pilot' Written flight plans were not mandated by federal or state law. Had they been, their absence from the trial evidence would have proved fatal to Plaintiff's claim. Because they were not required, the court will view the sworn testimony very carefully. The testimony of all of Plaintiff's witnesses was detailed, consistent, and highly credible.
The weight of the evidence establishes that fewer than 10 minutes of each round-trip assignment involved taking off, landing and flying over Oregon land. Perhaps, some additional activity did occur offshore of Oregon's coast, but the vast majority was to the northwest, off the Washington coastline. That is especially confirmed by the August 11, 2008, letter from Arctic Air's President and CEO.
Even when viewing Defendant's assumptions in the best possible light, the Oregon flight time spent does not approximate a majority. Certainly, given the uncertainties remaining after the audit examination, the assessed deficiencies were not improper. But, given the later presentation at trial, including the type of testimony described above, the court must find for Plaintiff.
In these appeals, a preponderance of the evidence is required to sustain the burden of proof. That burden of proof shall fall upon the party seeking affirmative relief. ORS 305.427. Plaintiff has clearly met that statutory requirement in this record. *Page 6 
 III. CONCLUSION
Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted for tax years 2003 and 2004.
Dated this ______ day of February 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Jeffrey S. Mattson on February26, 2009. The Court filed and entered this document on February 26,2009.
[1] For later years, Plaintiff was a full-time Oregon resident.
[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2003. *Page 1